UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.

OMAR LAMAR COOPER,

           Defendant.
                                   /

CR. NO. 19-20015

HON. TERRENCE G. BERG

## MOTION AND BRIEF IN SUPPORT OF DEFENDANT OMAR LAMAR COOPER'S PETITION FOR COMPASSIONATE RELEASE

Even five months into the COVID-19 pandemic, the coronavirus continues to ravage the Bureau of Prisons, with over 6,500 prisoners having tested positive for the virus and at least 90 prisoners dying of it. Prisoners are on nearly constant lockdown, living in fear of catching this deadly virus and lacking any viable way to socially distance or follow other guidelines needed to keep them safe. Mr. Omar Lamar Cooper is currently housed at the Federal Correction Institution (FCI) Morgantown in Monongalia County, West Virginia.

Mr. Cooper is at heighted risk for contracting life-threatening illness due to the coronavirus because of his history of hypertension and obesity. PSR, ¶¶ 45-46. Mr. Cooper is a non-violent offender who has demonstrated a commitment to self-improvement during his term of incarceration, serving his

1

fellow inmates as an orderly in the medical division of FCI Morgantown, earning his GED earlier this spring, and incurring no discipline at his institution, according to the U.S. Probation Services.

In light of BOP's inaction, and the potentially dire consequences if Mr. Cooper remains in prison, this Court should exercise its authority to grant relief under 18 U.S.C. § 3582(c)(1)(A)(i) by releasing him and placing him on home confinement for the remainder of his prison sentence.

## I. Procedural History

Mr. Cooper entered a Rule 11 guilty plea to two counts of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g) and forfeited the relevant firearms pursuant to 18 U.S.C. § 924(d). PSR ¶¶ 1-7. Mr. Cooper was granted bond and complied with all the conditions for the duration of the pre-trial proceedings. *Id.* at ¶¶ 4-5. The offense conduct was alleged to have taken place on December 18, 2018 when two officers of the Bureau of Alcohol, Tobacco, and Firearms searched one of Mr. Cooper's residences upon the prompting of a confidential informant who alleged that Mr. Cooper was selling crack cocaine. ¶¶ 10-11.

Mr. Cooper pleaded guilty to these counts and was sentenced to a term of 24 months and has served 6 months of this sentence to date. ECF 30, Judgment, 2.

II. **Legal Standard**

The First Step Act significantly changed § 3582, allowing defendants to directly petition courts for relief instead of leaving relief decisions solely with the BOP. 18 U.S.C. § 3582(c)(1)(A)(i). "The First Step was passed against the backdrop of a documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants." *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. May. 16, 2020). The compassionate relief statute, as amended by the First Step Act, authorizes district courts to grant relief whenever "extraordinary and compelling reasons" warrant a reduction, consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) and the Sentence Commission's applicable policy statements—regardless of the BOP's position.

The Sentencing Commission's policy statements set out three categories qualifying as extraordinary and compelling: terminal medical conditions (having 18 months or fewer left to live due to a medical condition), medical debilitation (inmate cannot perform self-care and is bed-ridden more than 50% of waking hours), and family circumstances. U.S.S.G. § 1B.13 cmt.1(A)-(C). The Commission also added "other reasons" in recognition that the three named categories may not capture the breadth of circumstances that may be considered extraordinary and compelling. The First Step Act broadened courts' discretion to use Application Note 1(D) of U.S.S.G. § 1B1.13 to decide what

3

"extraordinary and compelling circumstances" are[1] and if compelling reasons other than age, medical conditions, or family circumstances exist.[2] This Court therefore has extended authority under the First Step Act to find that the COVID-19 health pandemic constitutes an extraordinary and compelling reason to grant compassionate release.

Because of the First Step Act's broadening of court's discretion to interpret "other reasons" under the policy statements the Court in this instance should not be bound by these three enumerated circumstances. Moreover, because these policy statements predate the First Step Act, "there is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act." *United States v. Beck*, __ F. Supp. 3d __, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019).

### III.  Cooper has Complied with the 30-day Rule under § 3582(c)(1)

Section 3582(c)(1)(A)(i) generally requires exhaustion of administrative remedies. Mr. Cooper requested compassionate release with the BOP on May 27, 2020, more than 30 days ago. Ex. A, CR Request. The BOP rejected his

---

[1] *United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020); *accord United States v. Redd*, 2020 WL 1248493, *6 (E.D. Va. Mar. 16, 2020); *United States v. Bradshaw*, 2019 WL 7605447, *3 (M.D.N.C. Sept. 12, 2019).
[2] See, e.g., *United States v. Redd*, No. 1:97-cr-0006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020) ("[A] court may find . . . that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) . . . ."); *United States v. Perez*, No. 88-10094-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) (same); *United States v. Maumau*, No. 2:08-cr-0758-TC, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020) (same).

4

request on June 3, 2020. Ex. B, RIS Denial. Thus, there has been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, § 3582(c)(1)(A)(i), and there is no exhaustion barrier to him requesting relief from this Court. Here, 30 days have lapsed since Mr. Cooper requested compassionate release on May 27, 2020 and the rejection of his request by the FCI Morgantown Warden on June 3, 2020, so this motion is ripe for review.

## IV.     Extraordinary and Compelling Reasons Warrant Compassionate Release

COVID-19 is ravaging the BOP. People in federal custody cannot take appropriate hygienic and social-distancing measures to protect themselves from infection. These are extraordinary times. Mr. Cooper's health conditions and demographics make him particularly vulnerable. This Court can and should convert his remaining time in custody to home confinement.

As the BOP faces an escalating health crisis because of COVID-19, several courts, including in this district, are exercising their authority to grant release under § 3582(c)(1)(A)(i), to nonviolent inmates who are at risk of death or serious illness from COVID-19. *See, e.g., United States v. Saladrigas,* No. 13-cr-20913, ECF No. 129 (E.D. Mich. May 13, 2020) (Borman, J.)*; United States v. Al-Jumail,* No. 12-20272, 2020 WL 2395224 (E.D. Mich. May 12, 2020) (Hood, C.J.); *United States v. Hunt, No. 18-20037,* 2020 WL 2395222 (E.D. Mich. May 12, 2020) (Hood, C.J.); *United States v. Reddy,* No. 13-CR-20358,

2020 WL 2320093, at *4 (E.D. Mich. May 11, 2020) (Leitman, J.); *United States v. Amarrah,* No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (Levy, J.); *United States v. Saad,* No. 16-20197, 2020 WL 2251808, at *1 (E.D. Mich. May 5, 2020) (Hood, C.J.); *United States v. Atwi,* No. 18-20607, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020) (Michelson, J.); *Samy v. United States,* No. CR 16-20610-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020) (Tarnow, J.); *Miller v. United States,* No. CR 16-20222-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) (Tarnow, J.).

Release is consistent with the Sentencing Commission's policy statements for two reasons. First, Mr. Cooper's current health condition and incarceration during this pandemic "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" U.S.S.G. § 1B1.13, cmt. n. 1(A)(ii); *Reddy*, 2020 WL 2320093, at *7; *Amarrah*, 2020 WL 2220008, at *6. He also presents "Other Reasons" under U.S.S.G. § 1B1.13, cmt. n. 1(D), warranting compassionate release, *Miller*, 2020 WL 1814084, at *3, because while the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability.

The publicized steps that the BOP has taken thus far haven't alleviated the risk, and its internal compassionate release guidelines generally bar relief to inmates until they are actively and desperately unwell. Bureau of Prisons, Program Statement 5050.50, Compassionate Release Procedures, 4-7, (Jan. 17,

6

2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This futility was recognized by another judge in this district particularly as it relates to the current conditions at FCI Elkton. *United States v. Coles*, No. 18-CR-20254, 2020 WL 1899562, at *5 (E.D. Mich. Apr. 17, 2020) ("While the BOP states that it has implemented procedures to combat the spread of COVID-19, it is evident that there is still a lack of protective equipment, hygienic products, and maintenance of social distancing guidelines at FCI Elkton.").

### a. The current absence of diagnosed cases at FCI Morgantown does not mean that it is an immune facility.

To date, there have not been any confirmed cases of COVID-19 at FCI Morgantown.[3] Nevertheless, courts have not hesitated in the face of this unprecedented public health to find that compassionate release is warranted even with no cases confirmed. See, e.g., *United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221 (E.D.N.Y. April 17, 2020) ("absent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility"); *United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *4 (N.D. Cal., April 10, 2020) ("Prison conditions mean incarcerated individuals, as well as society as a whole, are safer the more defendants are released."). As Judge Levy held, "zero *confirmed* COVID-19

---

[3] *COVID-19 Update*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited July 1, 2020).

7

cases is not the same thing as zero COVID-19 cases." *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020). Courts have noted that even a low number of identified, active cases does not mean that an inmate should not be granted compassionate release, as this is a volatile situation in which any and all facilities are vulnerable to rapid outbreaks. *See United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *4 (E.D. Mich. May 15, 2020) ("Presumably, many of FCI Morgantown's staff live in Monongalia County and may have been exposed to COVID-19.").

> **b. Cooper's health conditions and demographics place him at high risk of injury or death**.

*Hypertension.* Mr. Cooper suffers from chronic high blood pressure, also known as hypertension. This condition places Mr. Cooper at an intolerable risk of severe or fatal complications due to COVID-19. Hypertension is defined as regular blood pressure over 120/80. Nancy A. Anoruo, M.D., M.P.H., *Having high blood pressure may make coronavirus more dangerous*, ABC News (Jun. 1, 2020), https://abcnews.go.com/US/high-bloodpressure-make-coronavirus-dangerous/story?id=70991996.

While the CDC has not listed hypertension as a specific risk factor, research is building that suggests that high blood pressure is the most common co-morbidity for persons admitted for in-hospital COVID-19 treatment in the United States. *See* Safiya Richardson et al., *Presenting Characteristics,*

*Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area*, J. of the Am. Med. Ass'n (Apr. 22, 2020) (listing hypertension as the most common comorbidity, present in 56.6% of cases studied), available at https://jamanetwork.com/journals/jama/fullarticle/2765184 ("New York City Study"). Other studies bear this note, noting that 63% of patients with COVID-19 in the ICU had baseline hypertension, Nancy A. Anoruo, M.D., M.P.H., *Having high blood pressure may make coronavirus more dangerous*, ABC News (Jun. 1, 2020), https://abcnews.go.com/US/high-bloodpressure-make-coronavirus-dangerous/story?id=70991996, and that fatalities among patients in China were much higher among hypertensive patients, See CDC, Interim Clinical Guidance for Management of Patients with Coronavirus Disease (COVID-19), available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinicalguidance-management-patients.html (last accessed Apr. 30, 2020) (listing hypertension as condition "associated with increased illness severity and adverse outcomes").

The imminent threat that the possibility of contracting coronavirus poses to an individual with hypertension such as Mr. Cooper necessitates his release into home confinement for the remainder of his sentence.

***Body Mass Index.*** Standing 6'1" and weighing 310 pounds, Mr. Cooper has a body mass index (BMI) of 40.9.[4] According to the CDC, this makes Mr. Cooper severely or extremely obese.[5]

The CDC's initial list of risk groups identified severely obese people, those with a BMI of 40 or above, as particularly at a higher risk for COVID-19.[6] Mr. Cooper's BMI places him at greater risk for life-threatening complications due to COVID-19.

***Race.*** Mr. Cooper is a Black man. The CDC's data suggests "a disproportionate burden of illness and death among racial and ethnic minority groups." CDC, *COVID-19 in Racial and Ethnic Minority Groups*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnicminorities.html (last accessed June 29, 2020). A report detailing data gathered from 580 patients hospitalized with lab-confirmed COVID-19 found that 33% of hospitalized patients were Black compared to 18% in the community. *Id.* Where race and ethnicity data were available for those who died of COVID-19, New York City found death rates among Black people (92.3 deaths per 100,000 population) and Hispanic/Latino persons (74.3) that were

---

[4] *See* Nat'l Heart, Lung, and Blood Inst., *Calculate Your Body Mass Index*, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.
[5] CDC, *Defining Adult Overweight and Obesity*, https://www.cdc.gov/obesity/adult/defining.html.
[6] CDC, *People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

10

substantially higher than that of white (45.2) or Asian (34.5) persons. *Id.* Although researchers still do not know why COVID-19's mortality rate is higher among Black Americans, at least one court has suggested race is a factor to consider. *See Essien v. Barr*, No. 20-CV-1034-WJM, 2020 WL 1974761, at *7 (D. Colo. Apr. 24, 2020) (noting that a 55-year-old black man, was at higher risk of experiencing severe complications from COVID-19 in ordering his early release from prison).

Mr. Cooper's age and health conditions put him at high risk to COVID-19 illness because of his current incarceration. As explained in *Loyd v. United States*, No. CR 15-20394-1, 2020 WL 2572275, at *3 (E.D. Mich. May 21, 2020), even if these "conditions do not independently and perfectly fit the definition of severity, as outlined by the CDC, all of his conditions compounded still place [the movant] in a much more vulnerable position than a healthy person, if he were to get COVID-19." Thus, this Court should find that extraordinary and compelling reasons exist for his release.

Mr. Cooper has not served 50% of his sentence. This factor alone precluded him from compassionate release under BOP rules. Section 3582(c), however, has no such requirement.

### c. Danger to the Community.

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or

to the community, as provided in 18 U.S.C. § 3142(g)." The Court has previously found that Mr. Cooper is not a danger to the community when it released Mr. Cooper on bond pending trial, satisfying the § 3142(g) community factor.

That Mr. Cooper's offense was non-violent and that he has already shown himself more than able to comply with the conditions of supervised release demonstrates that Mr. Cooper is not a danger to the community. He has also incurred no discipline while in prison according to U.S. Probation Services.

### d. Other § 3553 factors favor compassionate release.

***Nature and circumstances of the offense.*** Although Mr. Cooper's offenses are serious, he timely accepted responsibility for them, and they were non-violent. He thus does not pose a danger to the community. As Chief Judge Hood explained recently in granting another request for compassionate release, even when a crime is "egregious," when it is "ultimately nonviolent," safeguards can be put in place to ensure a person "serve[s] his term to completion and compl[ies] with Court guidelines" on home confinement. *United States v. Al-Jumail*, No. 12-20272, 2020 WL 2395224, at *5 (E.D. Mich. May 12, 2020). The same is true here.

***Mr. Cooper's commitment to rehabilitation and self-improvement.*** Mr. Cooper has been incarcerated for 6 months and he has had an exemplary behavioral record during that time.

Under *Pepper v. United States*, 562 U.S. 476, 490–93 (2011), the Court can, and indeed must, consider post-offense developments under § 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." Id. at 492. Indeed, "[s]everal courts have . . . considered a defendant's rehabilitation in granting compassionate release." *United States v. Brown*, No. 4:05-cr-00227-1, 2020 WL 2091802, at *7 (S.D. Iowa Apr. 29, 2020).

According to U.S. Probation Services, Mr. Cooper has incurred no discipline during his term of imprisonment. Moreover, U.S. Probation Services reported to defense counsel that Mr. Cooper obtained his GED on March 13, 2020 of this year, demonstrating his strong commitment to self-improvement. Finally, Mr. Cooper has also worked as an orderly in the medical division of his institution. Altogether, Mr. Cooper's ethic of service, self-improvement, and rehabilitation has furthered the aims of § 3553 and shows that home confinement is appropriate.

### e. Mr. Cooper's release plan is solid and commendable.

Mr. Cooper enjoys the love and support of his immediate and extended family and plans to reside with his long-term partner Jessica Marks at his home at \*\*\*\*\* Nottingham Street, Detroit, Michigan if granted compassionate release. PSR, ¶¶ 40-41, 44; Ex. A, CR Request. Moreover, Mr. Cooper also has

13

a standing job offer at his prior employer, Brilar, a landscaping and home maintenance company located in Oak Park, Michigan. *Id.* Mr. Cooper likewise enjoys the support of his two maternal half-siblings, Jack Cooper and Jermaine Cooper. PSR, ¶ 41. Mr. Cooper is father to three children, ages 12-19, whom he has attempted not to involve in his criminal legal issues so as not to add to their stress. *Id.* at ¶ 43.

Throughout the entire pendency of these criminal legal proceedings, Mr. Cooper's partner and his half-siblings have actively and dutifully supported him. *Id.* at ¶ 41-42. Given the stable home and employment situation he has to return to if granted release, Mr. Cooper has set himself up for success in the home confinement environment.

## V. Conclusion

Omar Cooper respectfully requests compassionate release.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER
EASTERN DISTRICT OF MICHIGAN**

s/*Andrew Densemo*
ANDREW DENSEMO (P37583)
Attorney for Defendant
613 Abbott Street, 5th Floor
Detroit, Michigan 48226
(313) 967-5829
E-mail: andrew_densemo@fd.org

Dated: July 9, 2020

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          CR. NO. 19-20015

    Plaintiff,

          HON. TERRENCE G. BERG

v.

OMAR LAMAR COOPER,

    Defendant.
_____/

## CERTIFICATE OF SERVICE

    I, hereby certify that on July 9, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

        Paul Kuebler
        Assistant United States Attorney
        United States Attorney's Office
        211 W. Fort Street, Suite 2001
        Detroit, Michigan 48226

        **FEDERAL COMMUNITY DEFENDER**
        **EASTERN DISTRICT OF MICHIGAN**

        *s/Andrew Densemo*
        ANDREW DENSEMO (P37583)
        Attorney for Defendant
        613 Abbott Street, 5th Floor
        Detroit, Michigan 48226
        (313) 967-5829
        E-mail:  andrew_densemo@fd.org

Dated: July 9, 2020