UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA

Case No.  2:19-CR-20015-TGB

v.

ORDER ON MOTION FOR
SENTENCE REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)

OMAR COOPER

(COMPASSIONATE RELEASE)

Upon motion of ☑ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☑ GRANTED

☑ The defendant's previously imposed sentence of imprisonment of _____24 months_____ is reduced to _____time served_____. If this sentence is less than the amount of time the defendant already served, the sentence is reduced to a time served; or

    ☑ Time served.

    If the defendant's sentence is reduced to time served:

        ☐    This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified,

a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended; or

☑ There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel.  There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

☐ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where they will be released because it was not included in the motion for sentence reduction.

☐ Under 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of ☐ probation or ☐ supervised release of _____ months (not to exceed the unserved portion of the original term of imprisonment).

☐ The defendant's previously imposed conditions of supervised release apply to the "special term" of supervision; or

☐ The conditions of the "special term" of supervision are as follows:

☐ The defendant's previously imposed conditions of supervised release are unchanged.

☑ The defendant's previously imposed conditions of supervised release are modified as

follows:

The defendant shall self-quarantine at home for 14 days immediately upon release. The defendant shall participate in the Location Monitoring Program for 180 days, utilizing technology as directed by the probation officer, and abide by all requirements of the program. The defendant is restricted to his residence at all times, except for employment; education; religious services; substance abuse treatment and counseling; mental health; attorney visits; court appearances; court-ordered obligations; or other activities as preapproved by the probation officer. The Court waives the fees of the program and the costs of the tether. If the defendant is in full compliance with the conditions of supervised release, the probation officer, after the 180 days, may discontinue this condition.

☐ DEFERRED pending supplemental briefing and/or a hearing.  The court DIRECTS the United

States Attorney to file a response on or before _____, along with

all Bureau of Prisons records (medical, institutional, administrative) relevant to this motion.

☐ DENIED after complete review of the motion on the merits.

☑ FACTORS CONSIDERED (Optional)

See addendum.

☐ DENIED WITHOUT PREJUDICE because the defendant has not exhausted all administrative remedies as required in 18 U.S.C. § 3582(c)(1)(A), nor have 30 days lapsed since receipt of the defendant's request by the warden of the defendant's facility.

IT IS SO ORDERED.

:

s/Terrence G. Berg
UNITED STATES DISTRICT JUDGE


Dated:   August 26, 2020

## ADDENDUM - CONTINUED FROM PAGE 3

The Court has considered the question of whether Mr. Cooper has exhausted his administrative remedies. The Government takes the position that Mr. Cooper has not yet exhausted his administrative remedies because in his request for early release to the BOP, he only raised the medical conditions of hypertension and borderline diabetes, but did not include the factors of obesity and race, which he raises before the Court.

In response, Cooper cites to case law holding that, because these exhaustion requests are made by pro se litigants, they should be construed liberally and therefore the request to the warden need not be identical to the motion made before the court. Here, Mr. Cooper referred to COVID-19 and to his medical conditions generally in his request to the warden. This is sufficient to exhaust his administrative remedies even if the precise reasons he relies upon before the Court are different. *See United States v. Dean*, No. 11-20195, 2020 WL 4251344, at *1 (E.D. Mich. July 24, 2020) (collecting cases) (noting that some district courts "have been skeptical of the notion that the statute imposes any requirement of 'issue exhaustion' on requests for compassionate release. . . ."). Moreover, although the Court is not privy to the complete medical record that was presented to the warden, the only medical records that the Defendant has are the medical records that were generated by the prison. Therefore, the prison was in a position to have all of his medical records, and in a position to know what all of his conditions are when it made its decision.

Regarding the question of extraordinary and compelling reasons justifying release, the Government concedes that the defendant's medical conditions of obesity (BMI of 40.9) and hypertension are sufficient because the CDC recognizes them as medical conditions that either put him at risk, or might put him at risk, of severe illness or death if he contracts COVID-19. ECF No. 35, PageID.232; *see also People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 17, 2020). As to

the conditions in the place of Mr. Cooper's confinement, FCI Morgantown, while that institution is not presently reporting any positive cases of COVID-19, the BOP's records show that little to no testing is currently being conducted there. *See* https://www.bop.gov/ coronavirus (updated daily). Because COVID-19 can be spread by individuals who are asymptomatic or pre-symptomatic, whether the virus is spreading at Morgantown or not cannot be reasonably known by the Court. *See Segars v. United States*, No. 16-20222-3, 2020 WL 3172734, at *3-4 (E.D. Mich. June 15, 2020).

Finally, the Court must consider the question of whether Mr. Cooper's release would present a danger to the community. Although his conviction involved firearms possession in the context of drug trafficking, which is an inherently dangerous criminal activity, his conduct did not involve the brandishing, use, or carrying of any weapon. A review of Cooper's criminal history shows that it involves comparatively minor and aged prior offenses: a 2000 conviction for fleeing and eluding police and a 2004 conviction of carrying a concealed firearm. The offense of conviction took place on December 18, 2019, some 15 years after Cooper's most recent prior conviction. So the defendant was apparently leading a generally law-abiding life for a fairly lengthy period time before the current offense. The Presentence Report did note, however, that Cooper has a pending charge from 2017, for entering a vacant building without written authorization, and that apparently a warrant remains outstanding for this charge. The Court has since learned from the Probation Department for the Eastern District of Michigan that Cooper no longer has any outstanding warrants.

Also relevant to dangerousness is the fact that he was granted bond after his initial appearance. ECF No. 7. In granting bond, the Magistrate Judge found, at a point in time much closer to Mr. Cooper's commission of the charged crime, that Mr. Cooper did *not* constitute a danger to the community. There is no reason for the Court to assume that Mr. Cooper presents a greater danger now, than he did when he was released on bond. However, the record also shows that Cooper tested positive for cocaine use three times while under Court supervision. This conduct

weighs against Cooper but it must be balanced against both the increased dangers of contracting COVID-19 in a prison setting and the availability of treatment and strict conditions to address any drug use if he is released.

The Court must also consider the factors under 18 U.S.C. § 3553. In addition to the nature and seriousness of the offense, which has been discussed above, the Court must consider the character and background of the individual defendant.  While incarcerated, Mr. Cooper has earned his GED, started working as an orderly in the medical division of FCI Morgantown and has received no disciplinary infractions. Defense counsel also notes that Mr. Cooper has a standing job offer at his prior employer, a landscaping and home maintenance company, which diminishes the Court's concerns as to his recidivism.  Because Cooper has served less than 25% of his sentence, the factor of deterrence is most salient to be considered.  The Court addresses this concern by imposing a condition of at least 180 consecutive days in home confinement to be served during the period of supervised release. *See United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *8 (E.D. Mich. May 15, 2020). More specifically, Cooper shall participate in the Location Monitoring Program for 180 days, utilizing technology as directed by the probation officer, and abide by all requirements of the program. Cooper is restricted to his residence at all times, except for employment; education; religious services; substance abuse treatment and counseling; mental health; attorney visits; court appearances; court-ordered obligations; or other activities as preapproved by the probation officer (Home Detention). The Court waives the fees of the program and the costs of the tether. If Cooper is in full compliance with the conditions of supervised release, the probation officer, after the 180 days, may discontinue this condition. Cooper is also ordered to self-quarantine at home for 14 days immediately upon his release.

Having considered all of the above factors, the Court finds that release is appropriate.